# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WHIRLEE RUDOLPH,** | : CIVIL NO. 1:CV-08-00340 |
| **Petitioner** | : (Judge Rambo) |
| v. | : |
| **RONNIE HOLT,** | : |
| **Respondent** | : |

## M E M O R A N D U M

Before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, filed by Petitioner Whirlee Rudolph ("Rudolph"), an inmate formerly incarcerated at the United States Penitentiary Canaan in Waymart, Pennsylvania.[1] Rudolph is challenging the Bureau of Prisons' ("BOP") calculation of his federal sentence. Specifically, he claims he is entitled to *nunc pro tunc* designation of federal service at a state facility. For the reasons that follow, the petition will be denied.

---

[1] Rudolph is currently incarcerated at the Federal Correctional Institution in Fort Dix, New Jersey. However, since Rudolph filed the instant habeas petition while incarcerated within the Middle District of Pennsylvania, this court retains jurisdiction. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) (stating immediate custody rule does not apply when a prisoner is transferred out of a judicial district after he has filed a petition for writ of habeas corpus with the district court).

**I.     Background**

While awaiting sentencing on federal charges stemming from an incident occurring on October 24, 2001,[2] on November 3, 2003, Rudolph was arrested and taken into custody by New York State authorities for criminal possession of a controlled substance.  (Doc. 6-2 at 36.)  Rudolph remained in the primary custody of New York State authorities until June 15, 2004, at which time he was produced in federal district court from state custody pursuant to a federal writ of habeas corpus *ad prosequendum* for sentencing on the charges stemming from the October 24, 2001 incident.  (Doc. 6-3 at 16.)  At that time, New York State authorities still maintained primary custody over Rudolph, with federal officials assuming secondary custody over him.

On June 15, 2004, after entering a plea of guilty, Rudolph was sentenced by the United States District Court for the Northern District of New York to a term of imprisonment of ninety-seven (97) months for one count of distribution of cocaine base pursuant to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  (Doc. 6-2 at 9.)  At sentencing, the district court considered whether Rudolph should receive *nunc pro*

---

[2] Rudolph was arrested by federal authorities on October 24, 2001, but was released to the supervision of the Drug Enforcement Administration due to his cooperation in an ongoing criminal investigation.  (Doc. 6-3 at 1.)  Even though Rudolph was released from custody at that time, federal authorities decided to charge him at a later date for the offenses committed on October 24, 2001.  (*Id.*)

2

*tunc*, or retroactive, designation to a New York State facility as the place of service for his federal sentence. (*See* Doc. 1 at 10-18.) Doing so would have resulted in Rudolph's federal sentence running concurrent to a state sentence. However, at the time of federal sentencing, a state sentence had not yet been imposed, and it was unclear whether Rudolph would receive a concurrent or consecutive sentence in state court. Therefore, rather than imposing a concurrent sentence at that time, the district court invited the parties to return to that court to raise the issue of designation of federal service at the state facility once the state sentence had been imposed. (*Id*. at 17-18.) The court did not give a specific time frame for such a request, but did point out to the parties that the court's jurisdiction over such a matter was limited to, at the most, one year through a § 2255 motion. (*Id*. at 14.) As a result, the district court's judgment and commitment order does not contain any reference to concurrent sentences. (*See* Doc 6-2 at 9-14.)

Following this federal sentencing hearing, Rudolph was returned to the primary custody of New York State authorities. On July 16, 2004, after pleading guilty to the charge of criminal possession of a controlled substance, Rudolph was sentenced in state court to a term of imprisonment of four (4) years to life, to run concurrently with the previously imposed federal sentence. (Doc. 1 at 20.) After

the state sentence was imposed, Rudolph did not timely return to federal court to raise the issue of *nunc pro tunc* designation.[3]

Rudolph was released from primary state custody on August 24, 2006. (Doc. 6-2 at 24.) The BOP calculated Rudolph's federal sentence as commencing on that date and running continuously since that date. (*Id*.) The BOP also reviewed Rudolph's case to determine whether he had any periods of which would qualify him for an award of jail time credit or "prior custody credit" pursuant to 18 U.S.C. § 3585(b). As a result, he received prior custody credit of seven days.[4] (*Id*.) Further, the BOP presumed that Rudolph's state and federal sentences would not run concurrently because the district court's judgment and commitment order was silent on the matter. (Doc. 6 at 3.) Rudolph's records reveal that all time he spent in primary state custody, beginning June 15, 2004 through August 23, 2006, was awarded and credited toward Rudolph's state sentence. (Doc. 1 at 23.) Thus, under 18 U.S.C. § 3585(b), Rudolph was not entitled to receive credit toward his federal sentence for this period of time.

---

[3] *See infra* p. 7.

[4] Specifically, Rudolph was awarded jail credit for time spent in state custody for the following days: October 24, 2001; July 6, 2002 through July 10, 2002; and July 17, 2002. (Doc. 6-2 at 24.)

Rudolph subsequently appealed the BOP's computation of his sentence to the Warden, Regional Director, and the BOP's Central Office, requesting a *nunc pro tunc* designation at a state facility in order to receive jail credit toward his federal sentence.[5] (*See* Doc. 1 at 21-23.) As a result, the BOP reviewed Rudolph's request for *nunc pro tunc* designation. (Doc. 6-2 at 38.) As part of the review process, by letter dated June 28, 2007, the BOP contacted the federal sentencing judge to determine his intent. The sentencing judge, after reviewing the previous record, opined that there should be no additional credit given to Rudolph.[6] (Doc.

---

[5] Respondent concedes that Rudolph has exhausted his administrative remedies. (Doc. 6 at 2 n.2.)

[6] In a July 10, 2007 letter to the BOP, the Honorable Thomas J. McAvoy of the New York Northern District Court gave the following reasons for his opinion that Rudolph should not receive additional credit:

> Mr. Rudolph was arrested for his involvement in the instant offense on October 24, 2001, and immediately began cooperating with the authorities. As a result of his cooperation, Rudolph was released to the supervision of the Drug Enforcement Administration on the same day as his arrest in an attempt to further his assistance. Presumably, it was his early cooperation with authorities that also led to the decision to charge him in an Information outlining his involvement in just one 23.0 gram sale of crack cocaine to a confidential informant. This charging decision resulted in statutory penalties of 5 to 40 years imprisonment rather than a 10 year to Life term of imprisonment if he had been charged with the distribution of the entire 59.9 grams of crack for which he is accountable. However, the defendant incurred several arrests while on release from Federal custody pending sentencing. Most notably, on November 3, 2003, he was arrested by the Troy Police Department and other agencies. As a result he pled guilty to criminal possession of a controlled substance, an A Felony, and was sentenced in State Court from 4 years to Life to run concurrent with the Federal sentence of 97 months.
>
> In addition to recovery of more than four ounces of cocaine he was found in

6-3 at 1-2.) After considering this and other factors under 18 U.S.C. § 3621(b),[7] on August 10, 2007 the BOP informed Rudolph that a *nunc pro tunc* designation was not appropriate in this case. (*Id*. at 4-5.)

---

> possession of a Beretta Model 21-A.22 caliber automatic pistol. The Court in the Federal case sentenced him to the low end of the guideline range and would note that the defendant has already received indirect benefit for his assistance in that he was allowed to plead to a charge that does not carry a 10 year mandatory minimum. The sentence imposed represents 23 months less than the 10 year mandatory minimum that otherwise could have been pursued by prosecutors. Since the criminal conduct that formed the basis of the New York State sentence was committed while the defendant was awaiting sentencing on the Federal Charges, this makes the matter more serious in the Court's mind and he has been given every consideration that the situation warrants.

(Doc. 6-3 at 1-2.)

[7] 18 U.S.C. § 3621(b) states, in part,

(b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-

    (1) the resources of the facility contemplated;

    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;

    (4) any statement by the court that imposed the sentence--

        (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

        (B) recommending a type of penal or correctional facility as appropriate; and

    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28**.**

On January 18, 2008, Rudolph filed, *pro se*, a motion to correct his sentence pursuant to Federal Rule of Criminal Procedure 35 or, in the alternative, 28 U.S.C. § 2255, in New York Northern District Court. (Doc. 1 at 26.) The district court denied the motion as untimely on January 24, 2008. (*Id*. at 27.)

On March 21, 2008, the Federal Public Defender filed a motion to reduce Rudolph's sentence pursuant to 18 U.S.C. § 3582(c)(2) in light of Amendment 706 to the sentencing guidelines, which reduced the base offense level listed on the drug quantity table for most crack cocaine offenses. (Doc. 15-2 at 7.) The district court granted the motion and reduced Rudolph's term of imprisonment from ninety-seven (97) to seventy-eight (78) months. (*See id*. at 10.) Rudolph filed a motion for reconsideration on August 4, 2008, contending that the district court should enter a new judgment and commitment order recommending to the BOP a retroactive designation of federal service at a state facility in order to receive credit toward his federal sentence for that time served. (*See id*. at 8.) The motion for reconsideration was denied on September 24, 2008. (*See id*.) Rudolph's subsequent appeal to the United States Court of Appeals for the Second Circuit is presently pending. (*See id*. at 9.)

Rudolph filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on February 25, 2008. (Doc. 1.) On April 7, 2008, an order to show

cause was issued, directing the Respondent to reply to Rudolph's petition. (Doc. 5.) The matter is now ripe for disposition.[8]

## II. Discussion

A petition for writ of habeas corpus under § 2241 is the proper vehicle for relief "where petitioner challenges the effect of events 'subsequent' to his sentence," *Gomori v. Arnold*, 533 F.2d 871, 874 (3d Cir. 1976), and where he challenges the execution of his sentence rather than its validity, *see United States v. Addonizio*, 442 U.S. 178, 185-88 (1979); *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001). Thus, Rudolph has properly invoked section 2241 to challenge the calculation of his federal sentence by the BOP and has done so in the proper district, where he was imprisoned at the time he filed the petition. *Barden v. Keohane*, 921 F.2d 476, 478-79 (3d Cir. 1990).

The Attorney General is responsible for computing federal sentences for all offenses committed after November 1, 1987, *United States v. Wilson*, 503 U.S.

---

[8] Respondent filed a response to the petition on April 28, 2008. (Doc. 6.) After the court granted Rudolph two extensions of time in which to file a traverse, (*see* Docs. 8 & 10), Rudolph filed a request to hold the case in abeyance pending the disposition of his motion for reconsideration filed in the New York Northern District Court. (Doc. 13.) As a result, by order dated April 2, 2009, the court directed Respondent to further respond to the habeas petition with the procedural posture of Rudolph's case in the New York Northern District Court. (Doc. 14.) That response was filed on April 2, 2009, (Doc. 15), and Rudolph replied on May 4, 2009, (Doc. 16).

329, 331-32 (1992); 18 U.S.C. § 3585, and the Attorney General has delegated this authority to the Director of the Bureau of Prisons, 28 C.F.R. § 0.96 (1992). Computation of a federal sentence is governed by 18 U.S.C. § 3585, and consists of the following two-step process: (1) a determination of the date on which the federal sentence commences, and (2) consideration of any credit to which petitioner may be entitled. *Chambers v. Holland*, 920 F. Supp. 618, 621 (M.D. Pa. 1996).

Section 3585(a) provides that a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). A federal sentence does not begin to run when a defendant is taken into federal custody from state custody pursuant to a writ of habeas corpus *ad prosequendum*. *Ruggiano v. Reish*, 307 F.3d 121, 126 (3d Cir. 2002); *Chambers*, 920 F. Supp. at 622. This is because the state remains the primary custodian in those circumstances.[9] Further, a concurrent sentence commences on the date of its imposition, not on the date of

---

[9] The jurisdiction that first arrests an offender has primary jurisdiction over the offender until that sovereign relinquishes it to another jurisdiction by, for example, bail release, dismissal of the state charges, parole release or the expiration of the state sentence. *See Taylor v. Reno*, 164 F.3d 440, 444 (9th Cir. 1998); *Chambers*, 920 F. Supp. at 622.

commencement of the prior sentence or some earlier date. *See Shelvy v. Whitfield*, 718 F.2d 441, 444 (D.C. Cir. 1983).

A determination of whether credit is warranted for time spent in custody prior to the commencement of a federal sentence is governed by 18 U.S.C. § 3585(b). This section provides the following:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences - -
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

*Id*. Thus, under § 3585(b), prior custody credit cannot be granted if the prisoner has received credit toward another sentence. *See also Chambers*, 920 F. Supp. at 622. "Congress made clear that a defendant could not receive a double credit for his detention time." *Wilson*, 503 U.S. at 337.

While § 3585(b) governs calculation of a sentence by the BOP, 18 U.S.C. § 3584 authorizes the federal sentencing court to impose a sentence that runs concurrent to a state sentence. This section provides, in part,

> (a) Imposition of concurrent or consecutive terms.--If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

§ 3584(a); *see also Ruggiano*, 307 F.3d at 132 (sentencing court has authority under § 3584 and U.S.S.G. § 5G1.3(c) to order a federal sentence to be fully and retroactively concurrent to a state sentence the defendant was already serving).

Under § 3585(a), Rudolph's federal sentence commenced on the date it was imposed. The federal sentencing court did not indicate in the judgment and commitment order that Rudolph's federal sentence would run concurrently with a state sentence to be imposed. As such, Rudolph's federal sentence could not have commenced any earlier than the date it was imposed, unless the sentencing court expressly intended that the sentence be retroactively concurrent with the state sentence.

There is no indication that Rudolph is seeking credit under § 3585(b). Rather, Rudolph contends that the BOP should have credited him with time served in a state facility because the federal sentencing judge intended the federal sentence

11

to run retroactively concurrent with the state sentence yet to be imposed.  The BOP has the authority to run an inmate's federal sentence concurrent with a state sentence in circumstances where the intent of the federal sentencing court or the goals of the criminal justice system would make the exercise of that authority appropriate.  *Barden*, 921 F.2d at 482-83; BOP Program Statement 5160.06, pp.4-7 (Doc. 6-3 at 31-34).  For example, a designation may be made: (1) if a federal sentencing court orders, on the judgment and commitment order, that the defendant's federal sentence shall run concurrently with a preexisting state sentence; (2) if a federal sentencing court orders concurrent service of the federal sentence at some time after the initial imposition of that sentence; (3) if an inmate requests a *nunc pro tunc* designation and the federal sentencing court does not object; or (4) if a state jurisdiction requests that the state and federal sentences be treated as concurrent sentences.  *Id*. at pp. 6-7 (Doc. 6-3 at 33-34).

Although the BOP must consider requests for concurrent sentences, it is not obligated to grant those requests.  *Barden*, 921 F.2d at 478 n.4 ("We recognize that neither the federal courts nor the Bureau are bound in any way by the state court's direction that the state and federal sentences run concurrently."); BOP Program Statement 5160.05, p. 6 (Doc. 6-3 at 33) ("there is no obligation under *Barden* for the Bureau to grant the request by designating a state institution retroactively as the

place to serve the federal sentence"). The BOP will review the federal and state sentencing courts' judgment and commitment orders, state sentence data records, and any other pertinent information relating to the federal and state sentences, in order to make a determination whether to run the federal sentence concurrently with the state sentence. BOP Program Statement 5160.05, p. 6 (Doc. 6-3 at 33.)

In the instant case, the federal sentencing court's judgment and commitment order was silent as to whether Rudolph's federal sentence should run concurrently with the state sentence yet to be imposed. While the transcript from the June 15, 2004 sentencing does indicate Judge McAvoy considered the issue of concurrent sentences, he did not order it so at that time. Rather, the court gave the parties the option of returning in a timely manner to request retroactive concurrent designation of federal service at a state facility after the state sentence had been imposed.

Rudolph's state sentence was imposed on July 16, 2004. However, neither party timely returned to the federal sentencing court. The first party to contact the federal sentencing judge about his intent to run Rudolph's federal sentence concurrently with the subsequent state sentence was the BOP. In its consideration of Rudolph's request for retroactive concurrent designation, the BOP contacted Judge McAvoy on June 28, 2007, almost three years after the federal and state sentences had been imposed. In response, Judge McAvoy clearly opined that

"there should be no additional credit given to [Rudolph] to reduce his sentence . . . ." (Doc. 6-3 at 1.) Consistent with judicial intent and BOP policy, the BOP determined that Rudolph's federal sentence ran consecutive to his state sentence. As such, the BOP did not abuse its discretion in denying Rudolph's request for *nunc pro tunc* designation. *See Barden*, 921 F.2d at 478.

## III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate order follows.

    s/Sylvia H. Rambo  
United States District Judge

Dated: May 11, 2009.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**WHIRLEE RUDOLPH,** : **CIVIL NO. 1:CV-08-00340**
:
**Petitioner** : **(Judge Rambo)**
:
v. :
:
**RONNIE HOLT,** :
:
**Respondent** :

# **O R D E R**

**AND NOW**, this 11th day of May, 2009, upon consideration of the petition for writ of habeas corpus (Doc. 1), and in accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

                                        s/Sylvia H. Rambo
                                        United States District Judge